IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re:<br><br>Logan Beck<br><br>　　Debtor. | Case No. 25-11438 MER<br><br>Chapter 7 |
| State of Colorado<br><br>　　Plaintiff,<br><br>v.<br><br>Logan Beck and Acme Revival, Inc.<br><br>　　Defendants. | Adversary No. 25-01184 MER |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS AND STRIKING AFFIRMATIVE DEFENSES**

　　THIS MATTER comes before the Court on the Motion to Dismiss Defendant Beck's Counterclaim and Strike Certain Affirmative Defenses ("**Motion**") filed by the State of Colorado (the "**State**"), Debtor/Defendant Logan Beck's ("**Beck**") response thereto, and the State's reply.[1]

## BACKGROUND

　　The State initiated the instant adversary proceeding against Beck and his company, Acme Inc. ("**Acme**"), on June 20, 2025.  The State filed an amended complaint on September 5, 2025.[2]  Per the amended complaint, the State asserts that Beck violated certain provisions of the Colorado Consumer Protection Act ("**CCPA**"). The State further asserts any debts Beck owes in connection with such violations are nondischargeable pursuant to §§ 523(a)(2)(A), (a)(4), (a)(6), and (a)(7).[3]  Beck filed an answer to the amended complaint on September 15, 2025.[4]  In his answer, Beck asserts a counterclaim for declaratory relief against the State.  In particular, Beck contends that no "fraud, fiduciary capacity, willful or malicious injury, or other grounds under § 523(a)(2), (a)(4), (a)(6), or (a)(7) exist that would except any debt from

---

[1] ECF Nos. 45, 46, & 47.

[2] ECF No. 38.

[3] Any use of the term "Section" or "§" hereafter means Title 11 of the United States Code.

[4] ECF No. 42.

discharge."[5] Accordingly, Beck requests the Court enter a judgment declaring that the debts alleged in the amended complaint are dischargeable pursuant to § 727. Beck also asserts several affirmative defenses to the State's allegations, including, among other things, that the complaint is deficient because the State failed to identify specific parties harmed by his alleged violations of the CCPA and that he was denied due process.

The State filed the instant Motion on October 6, 2025. Per the Motion, the State asserts that Beck's counterclaim should be dismissed pursuant to Rule 12(b)(6) because factual allegations do not support it, nor does it serve any useful purpose since it simply seeks a determination of the State's nondischargeability claims in Beck's favor.[6] The State also contends that several of Beck's affirmative defenses should be stricken pursuant to Rule 12(f). In response to the Motion, Beck argues that the counterclaim is necessary to prevent the State from "extracting" discovery in this proceeding and then voluntarily dismissing the proceeding to pursue a case in state court. Beck also contends that the State misuses Rule 12(f) and that the rule does not empower the Court to strike affirmative defenses that may constrain penalties or injunctions once the facts are developed. Alternatively, Beck argues he should, at a minimum, be granted leave to amend his counterclaim and affirmative defenses, and that the Court should enter an order finding any voluntary dismissal is without prejudice, and the State may not reuse discovery obtained in the instant proceeding.

## ANALYSIS

### A. Rule 12(b)(6) Dismissal Is Warranted

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the plaintiff.[7] A complaint or counterclaim will be dismissed unless it "contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[10] "A motion to dismiss is properly granted when a complaint or counterclaim provides no more than labels, conclusions, and a formulaic recitation of

---

[5] *Id.* at 33, ¶ 3.

[6] Any use of the term "Rule" hereafter means the Federal Rules of Civil Procedure.

[7] *In re Matt Garton & Assoc.*, Adv. Pro. No. 21-1215-TBM, 2022 WL 711518, at *3 (Bankr. D. Colo. Feb. 14, 2022) (*citing Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013)). Any use of the term "Rule" hereafter means the Federal Rules of Civil Procedure.

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Hear-Wear Technologies, LLC v. Oticon, Inc.*, 551 F.Supp.2d 1272, 1276 (N.D. Okla. 2008).

[9] *Id.*

[10] *Id.*

the elements of a cause of action."[11]

Here, Beck provides no factual allegations to support his counterclaim. Instead, Beck merely alleges the State cannot prove the necessary elements of its nondischargeability claims. This alone is insufficient to state a plausible claim for relief. Further, whether the State can prove the necessary elements for each of its claims is a question to be determined either on summary judgment or at trial. If the State cannot prove all necessary elements, then any debts Beck owes for his alleged violations of the CCPA will be discharged, regardless of whether he brings his counterclaim.

Notwithstanding this fact, Beck contends his counterclaim serves a non-redundant purpose. That is, Beck asserts that without his counterclaim, the State could voluntarily dismiss this proceeding and leave him with uncertainties regarding repeated litigation, thus denying him the "fresh start" guaranteed by the Bankruptcy Code. Beck's argument is somewhat unclear, but from what the Court can gather, he is concerned that if the State decides to dismiss this proceeding and initiate litigation against him in state court, then he would be denied the opportunity to discharge any debts for his alleged violations of the CCPA that the state court may find him liable for. While the Court understands Beck's concern, any claim the State may have against Beck for violations of the CCPA arose before he filed for bankruptcy.[12] As such, any debt that Beck owes for his CCPA violations would likely be discharged in his underlying bankruptcy case absent a finding that such debts are nondischargeable pursuant to § 523(a)(2), (a)(4), and/or (a)(6).[13] Therefore, the Court finds Beck's argument meritless and his counterclaim must be dismissed pursuant to Rule 12(b)(6).

**B.    Affirmative Defenses**

Next, the State asserts that several of Beck's affirmative defenses should be stricken. Pursuant to Rule 12(f), a court may strike an insufficient defense from a pleading either on its own or on motion made by another party. "A defense is insufficient if it cannot succeed, as a matter of law, under any circumstances."[14] "Striking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests."[15] A defense should not be stricken unless the insufficiency of the defense is clearly apparent, and no

---

[11] *Head-Wear Technologies, LLC*, 551 F.Supp.2d at 1276 (*citing Twombly*, 550 U.S. at 127).

[12] *In re Parker*, 264 B.R. 685, 696 (10th Cir. BAP 2001) (finding that a creditor's claim against a debtor arises at the time the debtor committed the conduct on which the claim is based rather than at the time the creditor's right to payment arises.).

[13] *In re Marshall*, 302 B.R. 711, 714 (Bankr. D. Kan. 2003) ("Thus, all prepetition debts are discharged under § 727(b), subject only to the § 523 exceptions from discharge."). The Court notes that debts that fall within kind specified by § 523(a)(7) are automatically nondischargeable. 11 U.S.C. § 523(a)(7) & (c)

[14] *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 648-49 (D. Kan. 2009).

[15] *In re McDaniel*, 590 B.R. 537, 552 (Bankr. D. Colo. 2018) (*quoting Purzel Video GmbH v. Smoak*, 11 F.Supp.3d 1020, 1029 (D. Colo. 2014)) (internal citations omitted).

evidence supporting the defense would be admissible.[16] "Even where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike."[17] Further, an affirmative defense must also comply with the pleading standards outlined in Rule 8 (incorporated by Fed. R. Bankr. P. 7008).[18] That is, an affirmative defense must include a "short and plain" statement to give the opposing party fair notice of the defense and the grounds upon which it rests.[19] "Like the plaintiff, a defendant must also plead sufficient facts to demonstrate a plausible affirmative defense, or one that has a 'reasonably founded hope' of success."[20] The decision to strike an affirmative defense rests within the sound discretion of the trial court.[21]

1. *Affirmative Defenses Three and Twenty-Four*

Beck's affirmative defense numbers three and twenty-four are substantially similar. In general, both defenses assert the amended complaint is deficient because the State failed to identify specific victims of Beck's alleged violations of the CCPA or to establish the standing of such victims.[22] The State argues that these defenses should be stricken because the CCPA does not require the attorney general to name specific parties, nor does it require proof of actual injury or loss by individual consumers. Beck contends these affirmative defenses do not challenge the State's authority to enforce the CCPA, but instead target the State's § 523(a) claims, particularly its § 523(a)(2)(A) claim, which requires the State to prove reliance and proximate cause.

The CCPA does not require the State to name specific aggrieved parties, nor does it require proof of reliance upon the Debtor's misrepresentations by every individual consumer for purposes of § 523(a)(2)(A).[23] Indeed, at least one division of this Court has found that the State has standing to bring nondischargeability actions on

---

[16] *Id.*; *Hayne*, 263 F.R.D. at 649.

[17] *In re McDaniel*, 590 B.R. at 552-53 (*quoting Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997)).

[18] *Hayne*, 263 F.R.D. at 649. Any use of the term "Rule" hereafter means the Federal Rules of Civil Procedure.

[19] *Id.*

[20] *U.S. v. Quadrini*, No. 2:07-CV-13227, 2007 WL 4303213, at *4 (E.D. Mich. Dec. 6, 2007).

[21] *Hayne*, 263 F.R.D. at 649.

[22] ECF No. 42 at 31-32.

[23] *In re MyLife.com Inc.*, 651 B.R. 30, 38 (Bankr. C.D. Cal. 2023) (*citing Fed. Trade Comm'n v. Gugliuzza (In re Gugliuzza)*, 527 B.R. 370, 373 (C.D. Cal. 2015)) (finding that requiring proof that each individual consumer relied upon the debtor's misrepresentations would undermine the FTC Act's purpose of preventing widespread consumer fraud and would be entirely inconsistent with the Bankruptcy Code's core principles.); *see People v. Shifrin*, 342 P.3d 506, 514 (Colo. App. 2014) (finding the CCPA does not require the Attorney General to elicit testimony from every consumer who was harmed to prove a violation.).

behalf of consumers under the CCPA.[24]  Therefore, these defenses cannot succeed as a matter of law and thus must be stricken.

### 2. Affirmative Defenses Four and Twenty-Two

Affirmative defenses four and twenty-two are also similar.  Both defenses assert the State's litigation of its § 523(a) claims without first liquidating the debts underlying those claims is impermissible.[25]  Beck argues that while he doesn't dispute that the Court has authority to liquidate claims in § 523 actions, these affirmative defenses are nonetheless necessary to "preserve abstention/comity and forum management arguments," and it cannot be argued that these defenses cannot succeed under any circumstances.[26]  The Court disagrees.  As Beck already acknowledged, the Court is empowered to liquidate claims.  Further, Beck provides no facts to support the defense that this is necessary to preserve arguments regarding abstention.  Neither party has sought to have the Court abstain from hearing this matter, and the Court has already advised the parties that it has no current plans to consider abstention.  In the event the Court is asked to consider abstaining from hearing these matters, Beck may address this argument at that time, regardless of whether he lists it as an affirmative defense here.  Therefore, defenses four and twenty-two will be stricken.

### 3. Affirmative Defense Twelve

Affirmative defense twelve asserts that a significant portion of the consumer complaints underlying the State's CCPA claims were only filed after Acme sued those consumers.  As such, Beck asserts those complaints are not reliable and are merely retaliatory.  Therefore, to the extent the State's claims are based on such complaints, they should be barred or discounted under the doctrines of selective enforcement, abuse of process, and unclean hands.  Beck also asserts the complaints fail to establish the requisite intent or causation requirements for relief under the CCPA and § 523(a).

The State asserts this affirmative defense should be stricken because it is not a valid defense to the CCPA.  Indeed, the attorney general's broad discretion to enforce the CCPA makes it unlikely that the defenses of selective enforcement, abuse of process, or unclean hands would succeed.  Beck disagrees.  Instead, Beck argues that because the State is seeking equitable relief in the form of an injunction, the Court should consider equitable defenses.  Alternatively, Beck asserts he should be permitted to amend this defense to narrow the scope to the State's request for an injunction alone and not to the CCPA penalties.

While Beck is correct that CCPA actions are generally equitable in nature, this does not automatically give a defendant a right to assert equitable affirmative defenses.[27]  This is especially true where certain equitable defenses, such as unclean

---

[24] *In re Trujillo*, 135 B.R. 674, 676 (Bankr. D. Colo. 1992).

[25] ECF No. 42 at 31-32.

[26] ECF No. 46 at 9.

[27] *Shifrin*, 342 P.3d at 512 ("The majority of courts in other jurisdictions have concluded that similar

hands, require the party seeking relief not to be guilty of the conduct for which it seeks relief.[28]  Here, it would be nearly impossible for the State to violate the CCPA.  Nonetheless, to the extent the State intends to use such complaints to establish intent or causation for purposes of its CCPA and § 523(a) claims, this defense may have merit.  Because the Court has not had the opportunity to review the complaints underlying the State's claims, nor have the parties had an opportunity to make arguments about the complaints, the Court cannot say that this defense cannot succeed as a matter of law.  Therefore, the Court will not strike this defense.

### 4. Affirmative Defense 13

In his thirteenth affirmative defense, Beck argues the imposition of liability or penalties without the opportunity to be heard as to each allegedly harmed consumer violates his due process rights.  The State contends this defense should be stricken because courts have typically rejected due process challenges to the CCPA.  Beck's response to this argument is difficult to parse, but from what the Court can gather, Beck is arguing that this defense is fact-specific and therefore should not be stricken at this point in the proceeding.

As the Court previously stated, the CCPA does not require the State to name each individual Beck allegedly harmed.  As such, it is unlikely Beck would succeed on any argument that relies on the State naming every individual it is bringing the claim on behalf of.  As such, the Court will strike this defense.

### 5. Affirmative Defense 14

Beck's fourteenth affirmative defense asserts that the State's claims should be barred, in whole or in part, by estoppel, waiver, or laches, including the State's refusal to review the full context of Acme's operations and relying on selectively presented disputes.  Like affirmative defense 12, the State argues there is no case law recognizing these as valid defenses to the CCPA.  Beck concedes that laches and waiver are generally "disfavored against the sovereign," and thus agrees to withdraw those defenses.[29]  However, Beck contends the defense of equitable estoppel is still a valid defense to the State's claim for an injunction pursuant to § 105(a).

The Court cannot find any case law to support Beck's claim that equitable estoppel is a valid defense to CCPA claims, nor did Beck cite to any case law in his response.  Further, Beck provides no facts to support this defense.  Indeed, to prevail on an equitable estoppel defense, the party asserting the defense must show that:(1)The party to be estopped knew of the facts; (2) the party to be estopped

---

consumer protection actions are primarily equitable."); *State ex rel. Weiser v. Center for Excellence in Higher Education, Inc.*, 529 P.3d 599, 610 (Colo. 2023).

[28] *In re Robertson*, 570 B.R. 352, 363 (Bankr. D. Utah. 2017); *In re Wigger*, 595 B.R. 236, 259 (Bankr. W.D. Mich. 2018) (finding the unclean hands doctrine requires the alleged misconduct on the part of the plaintiff relate directly to the transaction about which the plaintiff has made a complaint.).

[29] ECF No. 46 at 10.

intended that is conduct would be acted upon or must have acted such that the party seeking estoppel has the right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the other party's conduct for his injury.[30]

Essentially, equitable estoppel "prevents a party from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage."[31] Here, Beck has not provided any facts to show he can meet the elements required for an equitable estoppel defense. The Court also cannot see how an estoppel defense would be applicable here because Beck does not assert the State took an inconsistent legal position that put him at a disadvantage. As such, this affirmative defense should be stricken.

Given the above, the Court finds that affirmative defenses 3, 4, 13, 14, 23, and 24 will be stricken, while affirmative defense 12 will not be stricken.

### C. The Court Will Not Grant Leave to Amend

Alternatively, Beck requests the Court grant him leave to amend his counterclaim and his affirmative defenses. In particular, Beck seeks to narrow his counterclaim to the injunction/debt boundary for any relief sought and the § 524 consequences for any attempt to collect pre-petition amounts via an injunction or otherwise. Beck also seeks to narrow the scope of affirmative defenses 3, 12, 13, and 14 to the State's request for an injunction rather than its CCPA claims. The State contests Beck's request, arguing that the amendment would be futile. The Court agrees. The Court cannot see how narrowing Beck's counterclaim would resolve the fact that it is redundant. As the Court already stated, the issues raised in Beck's counterclaim are issues to be determined in this adversary proceeding. The Court also does not believe narrowing Beck's affirmative defenses would resolve the issues the Court has with those defenses. Therefore, the Court will not grant Beck leave to amend because doing so would be futile.[32]

### D. The Court Will Not Enter a Rule 41(a) Order

Beck also requests that the Court enter an order finding that any voluntary dismissal of this proceeding by the State is with prejudice or, at a minimum, is conditioned on the following: (1) that the State may not reuse discovery it obtains here absent an order from the Court; (2) a cost-shifting provision for duplicative litigation; (3) that the Court retain jurisdiction to decide already-joined § 523 issues; and (4) that any re-filing must be in a forum with jurisdiction to adjudicate all § 523 issues together.

The State asserts that the Court should decline to enter any such order at this

---

[30] *Spaulding v. United Transp. Union*, 279 F.3d 901, 909 (10th Cir. 2002).

[31] *Id.* (quoting *Penny v. Giuffrida*, 897 F.2d 1543, 1545 (10th Cir. 1990)).

[32] *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) ("Although Fed.R.Civ.P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile.")

stage because doing so would be premature, given that the State has not moved for dismissal and the Debtor has not provided any legal or factual justification for such an order. The Court agrees. At this point in the proceeding, for the State to move for dismissal without the Court's order, Beck would have to stipulate to dismissal.[33] Should Beck not stipulate to dismissal, the State would be required to file a motion with the Court requesting dismissal, to which Beck would have the opportunity to respond and raise these arguments at that time.[34] Further, the Court already addressed some of these concerns in its section regarding the dismissal of Beck's counterclaim. In particular, the Court has already held that any debts Beck may owe the State for his alleged violations of the CCPA will be discharged in the underlying bankruptcy case, absent a finding that they are nondischargeable under § 523(a), which the Court has exclusive jurisdiction to determine.[35] Therefore, the Court declines to enter an order establishing any "guardrails" to dismissal at this time.

## CONCLUSION

Given the above, THE COURT ORDERS the State's Motion is GRANTED in part and DENIED in part.

THE COURT FURTHER ORDERS Beck's Counterclaim is DISMISSED.

THE COURT FURTHER ORDERS the Motion is GRANTED as to Affirmative Defenses 3, 4, 13, 14, 22, and 23, which are stricken.

THE COURT FURTHER ORDERS the Motion is DENIED as to Affirmative Defense 12.

February 9, 2026

BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court

---

[33] Fed.R.Civ.P. 41(a)(1)(A).

[34] *Id.* at (a)(2).

[35] 28 U.S.C. § 1334(a); 28 U.S.C. 157(b)(I).

8